**Don L. FAVER, Appellant,**

v.

**O. P. LEONARD et al., Appellees.**

**No. 81.**

Court of Civil Appeals of Texas.

Tyler.

Oct. 15, 1964.

Glenn Faver, Jasper, B. R. Reeves, Palestine, for appellant.

Robert Stahala, Garrett, Hodges & Stahala, Fort Worth, R. E. Swift, Palestine, for appellees.

DUNAGAN, Chief Justice.

## DESIGNATION OF THE PARTIES

The Appellant is Don L. Faver, the Plaintiff in the Trial Court. The Defendants in the Trial Court, O. P. Leonard et al., are the Appellees.

## NATURE OF THE SUIT

Appellant, Don L. Faver, who resides in Palestine, Anderson County, Texas, is engaged in contract hauling of sand and gravel, brought this suit against Obie P. Leonard, Jr., Obadiah Callaway, Margery Ann Hodges and husband, Leland A. Hodges, Martha Jane Anthony and husband, James E. Anthony, and R. W. Leonard, seeking judgment for services rendered the Appellees for gravel hauled and delivered by Appellant to Appellees' ranch in Anderson County from February 18, 1963, until May 24, 1963, inclusive, aggregating the total sum of SIXTY EIGHT HUNDRED DOLLARS ($6,800.00).

Appellant, in his Third Amended Original Petition upon which he went to trial, alleged that he was

" * * * engaged in contract hauling of sand and gravel * * *. That the defendants, O. P. Leonard, Obie P. Leonard, Jr., Margery Ann *Hodge* Hodges and husband Leland A. Hodges, Martha Jane Anthony and husband James E. Anthony, and R. W. Leonard, as aforesaid are resident citizens of Ft. Worth, Tarrant County, Texas, and own and operate many farms and ranches in Texas, Arkansas, Missouri and New Mexico, and are the owners and operators of a farm or ranch known as the Anderson County, Ranch, on the Trinity River in Anderson County, Texas, and has at all times and places incident and pertinent to this suit retained Obadiah Callaway as their ranch foreman or manager of the Anderson County Ranch located in Anderson County, Texas, as aforesaid alleged, and the said Obadiah Callaway had the responsibility of the control, management and direction of the said Anderson County, Ranch, and, whereas because of the rains and because of the condition of the terrain, it became necessary for gravel to be spread in the lots and on certain roads located on said ranch, and the said Obadiah Callaway, pursuant to his duties and within the course and scope of his employment for his then employers, O. P. Leonard, Obie P. Leonard, Jr., Margery.Ann Hodges, and husband *Lelana* A. Hodges, Martha Jane Anthony and husband James E. Anthony and R. W. Leonard, retained Don L. Faver, * * * to haul and place gravel on the premises of the Anderson County Ranch, in Anderson County, Texas. That on or about October 16, 1961, the defendant Obadiah Callaway, as superintendent and general manager of the Anderson County Ranch, entered into a contract or agreement with Don L. Faver whereby the said Don L. Faver agreed to and assumed the responsibility of hauling gravel to said Anderson County Ranch * * * for a period of approximately two years, and after a series of hauls of gravel were made, the said Obadiah Callaway, who was on the scene of said Ranch and inspected the hauling of said gravel and likewise supervised the spreading of said gravel and in general supervised and controlled said work, would mail to said defendants in Ft. Worth, Texas, a form of authorization for payment by the other defendants to Don L. Faver for the services rendered in the gravel hauling.

"That said gravel was hauled at the instance and request of defendant Obadiah Callaway as ranch foreman for the other defendants who were the owners of said Ranch, * * * for which he was paid the contract price therefor, to the satisfaction of all parties.

"That, * * * this relationship prevailed to the complete satisfaction and approval of all parties up until February 18, 1963, and during the interim of time from the beginning until February 18, 1963, there was no complaint registered by Obadiah Callaway and/or the other defendants. That during this interim of time the said Obadiah Callaway * * * at various intervals mailed in authorization for payments for the gravel hauled. * * which services were rendered by Don L. Faver in keeping with and pursuant to the contract or agreement entered into with Obadiah Callaway and the other defendants, for which Obadiah Callaway in all his activities herein was acting within the course and scope of his employment for his employers, the other defendants herein, and who was under the course and supervision of the other defendants at all times and places pertinent to this suit, * * *.

"That each and all of the aforesaid hauling of gravel to the Anderson County Ranch from February 18, 1963 to May 24, 1963, was done and performed in Anderson Countyt, Texas, and was done and performed at the instance and request of Obadiah Callaway and the other defendantw, and was done and performed in a workmanlike manner * * *. That said work was done and performed under the direct supervision and direction of Obadiah Callaway * * * and and after said work was completed as per his instructions, he then mailed an authorization of purchase order to the other defendants in Ft. Worth, Texas,

requesting that indebtedness of SIXTY EIGHT HUNDRED DOLLARS be in all things paid and then for the first time the other defendants failed and refused, and still fail and refuse, to pay said indebtedness of SIXTY EIGHT HUNDRED DOLLARS, though often requested to pay same.

"That on or about March 28, 1963, the plaintiff became concerned about the non-payment for his services rendered as per contract agreement, and on said date he drove out to the Anderson County Ranch or Anderson County Farm of defendants for the purpose of picking up his machinery and equipment and discontinuing further pursuit of the job, and on said occasion he saw defendant Obadiah Callaway and advised him of his intention of such discontinuation of his work, and thereupon said Obadiah Callaway insisted that he continue said gravel hauling; that they absolutely had to have additional gravel on the Ranch and that if plaintiff would continue hauling said gravel until the contract was completed, he, Obadiah Callaway, would personally pay plaintiff for his services rendered in hauling the gravel that had already been delivered and for the additional services to be rendered by plaintiff at the completion of the job, and that upon such representation by the said Obadiah Callaway that he would personally pay for said items, plaintiff continued to haul the gravel as per contract until on or about May 24, 1963, and the said Obadiah Callaway thereby became jointly obligated to pay said items, as aforesaid, and but for such misrepresentation and personal agreement on the part of defendant Obadiah Callaway to pay said items the said plaintiff would have removed his equipment and discontinued further pursuit of the job. Though often requested, defendant Obadiah Callaway and all the other defendants herein, have failed and refused to pay said

items in the sum of SIXTY EIGHT HUNDRED DOLLARS, * * *."

Plaintiff prays that upon a final hearing he have judgment against Defendants jointly and severally for the sum sued for.

Appellees filed their Pleas of Privilege seeking to have the cause of action against them transferred to Tarrant County, Texas, the place of their residence.

To summarize the pleadings, the principal action is a suit by Appellant against (1) Appellees, one or more of whom own a farm situated in Anderson County, Texas, and (2) Obadiah Callaway, the manager of the farm who resides in Anderson County, Texas. Appellant's claim is for sums allegedly due for gravel hauled to the farm. Appellees' contention is that Appellant charged for more gravel than was delivered.

After service of citation, Appellees duly and properly filed their Pleas of Privilege to be sued in Tarrant County, the county of their residence. Appellant filed a Controverting Plea alleging that the exception to the general venue rule provided by Subdivision 4, Article 1995, Vernon's Ann.Rev.Civ.St., was applicable, necessitating that he prove a cause of action against Callaway. Appellant in his original petition and his first and second amended original petitions, allege that Callaway "guaranteed" his debt. Later, Appellant amended his petition claiming that Callaway "personally promised" to pay the debt, but alleged no consideration for such a promise.

A hearing was had on the Pleas of Privilege, after which the Trial Court entered an order sustaining the same and transferring the cause as to Appellees to the 48th District Court of Tarrant County, from which the appeal was taken.

Appellant requested the Court to make findings of fact and conclusions of law. The Court found, in part, that

"Plaintiff is engaged in contract hauling of sand and gravel in Ander-

son County, Texas. Defendant Obadiah Callaway at all times material to this hearing was in the employ of the other defendants in Anderson County, Texas, as their ranch foreman or manager. As such manager and agent for the other defendants, he contracted with the plaintiff for the said plaintiff to haul gravel to their Anderson County Ranch. That under said contract plaintiff hauled gravel for these defendants over a period of approximately two years, and until on or about March 28, 1963, he being paid for all gravel hauled prior to February 18, 1963.

"On or about March 28, 1963, Plaintiff not having been paid for any gravel hauled since said February 18th, went to the Leonard Ranch to pick up his equipment and discontinue hauling gravel for defendants. On said occasion, he saw the defendant Obadiah Callaway, and advised him of his intention to quit. Obadiah Callaway at this time insisted that plaintiff continue to haul gravel to the Leonard Ranch, stating to the plaintiff that it was essential that they have this additional gravel, and that if he the plaintiff would continue hauling gravel until the contract was completed, he, the said Obadiah Callaway would personally pay plaintiff for all gravel hauled since February 18, 1963, and would personally pay him for all additional gravel hauled. Acting upon this promise and representation of Obadiah Callaway, the plaintiff continued to haul and deliver gravel to the Leonard Ranch until on or about May 24, 1963—and had it not been for the promise and representation of the said Obadiah Callaway, the plaintiff would not have hauled additional gravel after March 28, 1963.

"Obadiah Callaway in all his dealings with Don L. Faver, plaintiff, and in those dealings and agreements out of which the law suit arises, was acting within the course and scope of his em-

ployment for defendants, as their agent, and that he was authorized to employ plaintiff to haul this gravel for the defendants other than himself during all of the period that said plaintiff did haul same.

"Plaintiff during the period from February 18, 1963, to May 24, 1963, both dates inclusive, hauled and delivered gravel to the Leonard Ranch, for which he was entitled to be paid the sum of $6800.00; that this amount, and no part of same, has been paid to the plaintiff, and that plaintiff is the legal owner and holder of said claim."

The Trial Court concluded as a matter of law that

"The promise made by Obadiah Callaway being a promise within the Statute of Frauds, and the consideration therefor, the hauling of the gravel by plaintiff, in an ordinary case would be a sufficient consideration; however, in a case involving the statute of frauds said consideration is not sufficient as there is no new and independent consideration flowing to Obadiah Callaway. 'In order to take his promise out of the statute, he must be bargaining for a consideration that is beneficial to himself and that constitutes his primary objection of desire. So the court holds that where there is a new and independent benefit or detriment to the promisor, then the statute of frauds is no defense; but where there is no new and independent benefit or detriment, the promise is unenforceable as a violation of the statute of frauds.' * * *"

At the time of the hearing on the Plea of Privilege, Callaway had filed his verified answer denying under oath the account, denying that he had made any promise to pay anyone's indebtedness, and alleging that there was no consideration flowing to him for any promise and that such purported promise being oral, same was not and had never been enforceable under the Stat-

ute of Frauds, Article 3995, Subdivision 2, R.C.S.

■ The question before this Court is: was there sufficient consideration in law to remove the promise of Callaway from the Statute of Frauds.

The Statute of Frauds, Article 3995, R.C.S., provides as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

"* * *

"2. To charge any person upon a promise to answer for the debt, default or miscarriage of another; or,

"* * *."

The answer to this question is controlled by Gulf Liquid Fertilizer Company v. Titus, 354 S.W.2d 378, Supreme Court of Texas, wherein the Court said:

"The next inquiry is whether there was sufficient consideration to support Titus's promise to pay Stracner's note. Muller v. Riviere, 59 Tex. 640 (1883). There must of course be sufficient consideration to make any promise a binding and enforceable one. 1 Corbin, Contracts (1950 ed.), § 110. * * *

"There is a difference between adequacy of consideration in law and the sort of consideration which the courts say is necessary to take the promise out of the Statute. Professor Corbin explains this difference:

"'It should be noted in the beginning that a consideration may be sufficient to satisfy the requirements of the common law of contracts without being sufficient to satisfy the "leading object" rule and take the

promise out of the statute of frauds. A promise is not out of the statute merely because there is a consideration for it. * * * The statute is applicable to promises to answer for the debt of another for which there is some sufficient consideration. It appears, however, that certain kinds of consideration will prevent a promise from being one "to answer for the debt of another" and will make the promisor a debtor on his own account.'

2 Corbin, Contracts, (1950) ed.) 279, § 367.

Corbin continues:

" 'The "leading object" that is sufficient to take a promise out of the statute must be found in the consideration for the promise and not in the promise itself or in the result of its performance. The promise is itself a promise to a creditor to pay a debt due to him from a third party; if it is not such a promise, it is certainly not within the statute. The performance of the promise will clearly benefit the creditor; and it will benefit the debtor too by discharging his duty to that creditor. * * * The promisor is not in the least benefited by the performance of his own promise. In order to take his promise out of the statute, he must be bargaining for a consideration that is beneficial to himself and that constitutes his primary object of desire.'

The Court further said:

■ "The 'leading object' or 'main purpose' rule has been adopted by the American Law Institute in its Restatement of the Law of Contracts, Section 184. This rule was announced by this court in Lemmon v. Box, 20 Tex. 329, (1857), where it said:

" '* * * that wherever the main purpose and object of the promisor

is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.' "

In the case at bar the leading object of the Appellee Callaway was not to subserve some purpose of his own. He was merely an employee of the other Appellees on a monthly salary. He did not own any interest in the property upon which the gravel was being spread. The evidence reveals that he left his employment on August 1, 1963.

Appellant did not plead that there was any consideration flowing to Callaway for his promise. Appellant did not offer any proof at the hearing of any benefit that would result to Callaway if Appellant continued to haul gravel or any detriment that would result to Callaway if Appellant refused to continue hauling gravel.

■ The Courts have used two or more of the following tests to determine whether an oral promise is outside of the Statute of Frauds: (1) the promise was made to subserve some main purpose of the promisor; (2) the promisor agreed to become primarily liable for the test of the debtor, and not simply or only to act as a guarantor or surety; and (3) the promise was supported by consideration. Whatever test is used the promise must be supported by consideration. It is now settled that the "main purpose" doctrine is applicable in this state. Gulf Liquid Fertilizer Company v. Titus, supra.

Other authorities supporting this rule of law are: Housley v. Strawn Mdse. Co. (Tex.Com.App.) 291 S.W. 864; Lemmon v. Box, 20 Tex. 329; Higginbotham-Bartlett Co. v. Dickey, (Tex.Civ.App.) 27 S.W. 2d 248, writ dismissed, and McDonald v. Trammel, Tex.Civ.App., 351 S.W.2d 89, affirmed by Supreme Court, 356 S.W.2d 143.

The Appellant does not challenge the findings of fact, but only the conclusion of law. We think the Trial Court reached the proper conclusion.

 Appellant's pleadings do not contain any allegation that there was any consideration flowing to Callaway for his promise to pay any indebtedness. No evidence was offered at the hearing of any consideration of any kind or nature flowing to or beneficial to Callaway for his purported promise. As pointed out above, Appellant sought to retain venue in Anderson County under Subdivision 4 of Article 1995, R.C.S. Continuously since the case of Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300, Supreme Court, it has been necessary for the Plaintiff to both plead and prove a bona fide cause of action against the resident Defendant in order to retain venue against the non-resident Defendant. The burden is on the Plaintiff to prove each and every element of his cause of action against the resident Defendant. This venue fact is based upon the proposition that the Plaintiff should satisfy the Court upon the venue hearing that he had not sought to defeat Defendant's Plea of Privilege by fraudently joining a local Defendant in fictitious allegations which he cannot prove. Park v. Wood, 146 Tex. 62, 203 S.W.2d 204, Supreme Court; Stockyards Nat. Bank v. Maples, supra; Richardson v. D. S. Cage Company, 113 Tex. 152, 252 S.W. 747, Supreme Court. The Plaintiff must introduce competent evidence sufficient to prove a cause of action against the resident Defendant under the allegations relied upon. Tunstill v. Scott, (Tex.Civ. App.) 1938, 120 S.W.2d 274, no writ history; Fester v. Locke, (Tex.Civ.App.) 1955, 285 S.W.2d 239, no writ history; Fikes v. Bogle, (Tex.Civ.App.) 1964, 376 S.W.2d 392, no writ history. The Trial Court having correctly found that Appellant failed to allege or prove any new and independent consideration flowing to Callaway, Appellant has not proved a cause of action against Callaway, the resident Defendant. It therefore necessarily follows that Appellant cannot maintain this action as against Appellees in Anderson County, Texas.

The Trial Court's order transferring the cause of action against the Appellees to the 48th District Court of Tarrant County, Texas, is affirmed.